RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
ALLIE WILSON
Assistant Federal Public Defender
New York State Bar No. 5479597
200 S. Virginia Street, Suite 340
Reno, Nevada 89501
(775) 321-8451/Tel.
(702) 388-6261/Fax
allie_wilson@fd.org

Attorney for Nathan Michael Keays

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>vs.<br><br>NATHAN MICHAEL KEAYS,<br><br>         Defendant. | Case No. 3:20-cr-00085-GMS-MMS-2 |

**Reply in Support of Defendant's Motion for a New Trial[1]**

## I.      Introduction

The government seeks to place Mr. Keays in a catch-22. The government asserts that Mr. Keays cannot meet his burden of proof for a new trial. Yet, it is the government's own attorneys who possess much of the information relevant to Mr. Keays' argument, and it is the same government attorneys whose word has been wholly discredited.

---

[1]      A sealed, unredacted version of this motion was filed on July 14, 2025, at ECF No. 415. This publicly-filed version contains redactions of information subject to the protective order in this matter, filed at ECF No. 349.  Exhibits A and B remain sealed as those documents are subject to the protective order.

In the end, the government is overcomplicating the issue and seeking to hold Mr. Keays to a burden that simply does not exist. Mr. Keays need not definitively prove who knew what and when they knew it. Such a burden of proof would be a difficult to meet in the best of circumstances, but it is wholly impossible in these circumstances, when the only three people whose testimony could prove actual knowledge (Klugman, Vandergaw, and Kindred) have all been discredited.

The relevant question is not what Kindred actually knew at the time of Mr. Keays' trial. "Scienter is not an element of a violation of 28 U.S.C. § 455." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859 (1988). In this post-trial posture in which the remedy of a new trial is on the table, the relevant question is whether "the public might reasonably believe that [Kindred] knew of facts creating an appearance of impropriety." *Id.* at 860. If the answer to that question is yes, then a new trial is warranted, no matter the judge's actual knowledge at the time of trial.

New information disclosed by the government after the filing of the supplemental motion meets that standard. The new disclosures reveal that Kindred almost certainly knew that Klugman and Vandergaw were in a romantic relationship. *See infra* Section II. It was common knowledge. Yet, Klugman and Vandergaw have both misled the defense in the course of this investigation by stating that they "know of no information suggesting that then Judge Kindred was aware before or during the *Keays* trial of [their] romantic involvement." ECF Nos. 412-3 at 4; 412-4 at 6.

The conflict of interest, therefore, is not just between Kindred and Vandergaw. The conflict extends to Klugman. Klugman was engaging in a very public affair with Vandergaw. *See infra* Section II. Klugman acknowledges that he knew of the allegation that Vandergaw and Kindred exchanged nude photos and that he knew Vandergaw was barred from appearing before Kindred. *See* ECF No. 412 at 18; 385-5 at 28. He may make the very unbelievable claim that he did not

2

discuss the allegations with Vandergaw until after the July 2024 release of the Judicial Council's report, *see* ECF No. 412-3 at 2, but an observer would make the reasonable assumption that Klugman had information that could doom Kindred's career—and that Kindred knew it.

There is, unquestionably, the "appearance of impropriety" here. *Liljeberg*, 486 U.S. at 860. That is all that is required for a new trial. Kindred took a break from Mr. Keays' trial during which he lied under oath to the judicial body investigating allegations of sexual misconduct. Those lies related in part to the nude photos he had exchanged with the girlfriend of the trial attorney who was appearing before him daily.

And, while Mr. Keays need not demonstrate actual bias, Kindred's decisions suggest that there was, in fact, bias. All Kindred's decisions throughout Mr. Keays' pretrial litigation and trial exclusively favored the government. Most of those issues were argued by Klugman.

This set of facts is unique, but the conclusion is simple: Kindred's failure to recuse himself from Mr. Keays' case has created at the very least the appearance of impropriety and partiality (and perhaps even actual bias). Kindred's failure to recuse warrants a new trial.[2]

## II. Additional Facts

Since the filing of Mr. Keays supplemental motion for a new trial, the government has disclosed new information. First, ████████████████████████████████████ ████████████████████ Mr. Keays' supplemental motion already raised suspicions as to Klugman's credibility. ECF No. 385 at 13-14. It was apparent from statements by Klugman's

---

[2]    As raised in the defense's motion to dismiss, for which the defense has sought leave to file, *see* ECF No. 413 (sealed), prosecutorial misconduct cannot be remedied by a new trial. Dismissal is the appropriate remedy for prosecutorial misconduct.

superiors at the U.S. Attorney's Office that he had repeatedly misrepresented the nature of his relationship with Vandergaw and that he generally had a reputation for dishonesty. *Id.*

██████████████████████████████████████████████ *See* Exhibit A (Letter Regarding AUSA Klugman).[3] █████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

Second, the government has disclosed email correspondence proving that the romantic relationship between Vandergaw and Klugman was common knowledge throughout the courthouse. Despite evidence to the contrary, Klugman and Vandergaw claim that their romantic relationship began in January 2024—months prior to Mr. Keays' trial. They claim that they had no romantic relationship even as they took numerous work-related trips together throughout 2023 (including sharing a hotel room in Seattle when Klugman traveled for work and Vandergaw joined without notifying their shared employer), even as Vandergaw moved in with Klugman in December 2023, and even as they planned a trip together to Hawaii, where they intended to share a studio hotel room for a vacation that Klugman described as a "honeymoon." *See* ECF No. 412 at 17-22.

Regardless of Klugman's and Vandergaw's claim that their romantic relationship began in January 2024, many throughout their office and the courthouse at large believed that the two were

---

[3] Exhibit A was provided to the defense on June 20, 2025. ████████████████ ████████████████████████████

4

engaging in an affair many months earlier. A colleague at the U.S. Attorney's Office wrote, "[t]hroughout this time (the summer of 2023) [Klugman's] and [Vandergaw's] physical affection for each other was obvious to members of the office and the court community and as a result much commented upon." Exhibit B (Email ███████████████).[4] Indeed, their inappropriate relationship was so well known that if coworkers needed to speak to Klugman but found Klugman's office door closed, they would assume that Vandergaw was inside and would not just knock before entering but would knock "and wait an appreciable moment before entering" out of fear of walking in on the two engaging in physical intimacy in the office. *Id.* And their inappropriate relationship was so well known that at least one judge commented on the relationship to that same coworker at the U.S. Attorney's Office, purportedly passing along a rumor that a U.S. Marshal had "seen them be physically intimate in the courthouse." *Id.* Their relationship, according to that AUSA, was an "open secret." *Id.*

The new disclosures contradict statements made by both Klugman and Vandergaw in connection with this litigation. Both Vandergaw and Klugman claim that they have no reason to believe Judge Kindred knew that they were romantically involved and cohabitating at the time of Mr. Keays' trial. Klugman states, under penalty of perjury: "I know of no information that then Judge Kindred was aware before or during the *Keays* trial of my romantic involvement with AUSA Vandergaw." ECF No. 412-3 at 4. Vandergaw identically states, also under penalty of perjury: "I know of no information that then Judge Kindred was aware before or during the *Keays* trial of my romantic involvement with AUSA Klugman." ECF No. 412-4 at 6.

---

[4]     Exhibit B was provided to the defense on June 13, 2025. It was authored, however, on January 15, 2025.

Both statements are demonstrably false. By the account of their coworker, their "physical affection for each other was obvious to members of the office and the court community and as a result much commented upon." Ex. B.

## III.    Argument

### A. The government is relying on statements by discredited attorneys to attempt to hold Mr. Keays to a burden of proof that is not only unobtainable but incorrect.

The government asserts multiple times in its response that Mr. Keays cannot meet his burden of proof for a new trial all while relying on the testimony of its own employees whose credibility the government agrees is impugned. *See* ECF No. 412 at 4, 22-23, 33, 35. The government highlights, for example, that Mr. Keays did not prove that Kindred knew about the relationship between Klugman and Vandergaw. In support of that statement, however, the government relies on statements by Klugman and Vandergaw that they had not personally discussed their relationship with Kindred. ECF No. 412 at 22. Meanwhile, the government ignores other evidence that it has recently disclosed to the defense that the affair between Klugman and Vandergaw was an open secret in the courthouse. *See* Ex. B. The government also cites Klugman's and Vandergaw's statements that they never discussed Mr. Keays' trial amongst themselves behind the scenes or with Kindred *ex parte*, while in the same sentence acknowledges that "evidence discredits Vandergaw's and Klugman's credibility." ECF No. 412 at 5. In so doing, the government seeks to force Mr. Keays into a catch-22: arguing that Mr. Keays cannot meet his burden of proof while the government (via its discredited employees) is the entity in possession of the very information that would definitively prove that misconduct occurred here.

Here is the problem with the government's argument: it is mistaking what burden of proof Mr. Keays must meet. Mr. Keays need not definitively prove what Kindred knew at the time of

Mr. Keays' trial. That would be a difficult goal in the best of circumstances, but it is wholly unobtainable in these circumstances, where the only direct proof of knowledge is testimony by three individuals, each of whom is the subject of an adverse credibility finding. One of those individuals (Kindred) has refused to speak to the defense and avoided service of a notice of deposition. *See* ECF No. 385 at 12, n. 4. Two of those individuals (Vandergaw and Klugman) have made demonstrably misleading statements directly in connection with this post-trial investigation—i.e. that they have "no information that then Judge Kindred was aware before or during the *Keays* trial of [their] romantic involvement." *See* ECF No. 412-3 at 4; 412-4 at 6. If actual knowledge were the standard, Mr. Keays would face an impossible task.

Actual knowledge, however, is not the standard. The correct standard is the "appearance of partiality." *Liljeberg*, 486 U.S. at 860. "If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible." *Id.* (quoting *Health Services Acquisition Corp v. Liljeberg*, 796 F.2d 796, 802 (5th Cir. 1986). In *Liljeberg*, the judge claimed to have forgotten about his fiduciary interest in the outcome of the litigation, but the Supreme Court found it sufficient that a reasonable person would assume that the judge knew of the relevant facts. *Id.* at 865-68.

The government, therefore, attempts to hold Mr. Keays to a burden that does not exist. In so doing, it asks Mr. Keays and this Court to trust the word of three individuals involved in Mr. Keays' case who have repeatedly shown themselves to be untrustworthy. But the word of those three discredited people does not govern here.

**B. There is the appearance of partiality, which alone warrants a new trial.**

Instead, what governs is what a reasonable person can observe and whether those observations create the "appearance of partiality." *Liljeberg*, 486 U.S. at 860. Here are the facts as seen by an outside observer:

1. Two Assistant U.S. Attorneys who played a role in Mr. Keays' prosecution are on administrative leave for professional misconduct. ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████ Ex. A. The same DOJ component has also found that Vandergaw concealed her sexual misconduct involving Kindred and intentionally misrepresented to investigators the nature of her relationship with Kindred.[5]

2. Klugman was one of two trial attorneys in this case. He appeared daily before Kindred during Mr. Keays' trial. He filed and argued almost every pretrial motion. He won every motion he argued.

3. Vandergaw played a role in Mr. Keays' prosecution, albeit a lesser role. She claims she cannot remember if she attended any part of Mr. Keays' trial but admits she may have "popped in." *See* ECF No. 412-4 at 5; ECF No. 412 at 26.

4. Vandergaw exchanged nude photographs with Kindred over a period of months.

5. Klugman and Vandergaw were openly engaging in a very public affair, and the courthouse community at large was aware of their affair. *See supra* Section II.

---

[5] *See* Office of Professional Responsibility, 2025 Investigative Summary 3 (March 19, 2025), https://www.justice.gov/opr/2025-investigative-summary-3.

6. Kindred was a member of the courthouse community. Therefore, he almost certainly knew of their relationship.

7. Klugman knew that Vandergaw was barred from appearing in front of Kindred because of an allegation involving nude photos exchanged between herself and Kindred. *See* ECF 412-1 at 17; ECF No. 412-3 at 1; ECF No. 387-5 at 28.

8. Kindred resigned after the Judicial Council of the Ninth Circuit made findings of judicial misconduct that included lying under oath to the investigating body. *See* ECF No. 385 at 10-11. Kindred's perjury occurred while he presided over Mr. Keays' trial.

9. The investigation into Kindred revealed that he made judicial decisions on inappropriate bases, including how low cut of a blouse a female defense attorney wore and his desire to remove a *pro se* litigant from his caseload. *See* ECF No. 385 at 12.

In retrospect, there is at least an "appearance of impropriety," which is the only standard Mr. Keays must meet. *Liljeberg*, 486 U.S. at 860. While Kindred was in the final throes of lying to protect his judicial career, he likely knew that the boyfriend of one of three women whose testimony would threaten his position was appearing before him in court. The obvious inference is that Klugman, too, had information that would doom Kindred's career via Klugman's obvious personal relationship with Vandergaw. And, in fact, Klugman did know. Klugman claims—very implausibly—that he did not discuss the allegations with Vandergaw until after July 2024, but he knew about the allegations because First Assistant U.S. Attorney Kate Vogel told when he was promoted to a supervisory position over her at the U.S. Attorney's Office. *See* ECF 412-1 at 17; ECF No. 412-3 at 1; ECF No. 387-5 at 28.

Vandergaw admits she may have been present for some portion of the trial, although she claims she cannot remember if or when she attended. On this point, at least, Mr. Keays has no

means of proving exactly when or how often Vandergaw was present in court. *See* ECF No. 412-4 at 5; ECF No. 412 at 26. The government holds that out as a reason to deny Mr. Keays' motion; however, it is the government's own employee whose word cannot be trusted on this point.

These facts combine with significant evidence of Kindred's biased decision-making in other instances. If Kindred is a judge who would grant a motion because he viewed the moving attorney's cleavage and who would negotiate a plea agreement *ex parte* with the government because a *pro se* litigant annoyed him, then a reasonable observer would also view him as the kind of judge who would side with the AUSA who was engaging in a public affair with a woman who sent Kindred nude photographs, particularly when that AUSA likely had information that could doom Kindred's judicial career.

While proof of actual bias is not necessary, there are significant indicators that there was actual bias. Klugman played a significant role in Mr. Keays' trial. He gave the opening statement. He drafted almost every pretrial motion. And he won everything he argued. Judge Kindred made decisions that exclusively favored the government. In so doing, he denied Mr. Keays the opportunity to present his defense when he precluded Mr. Keays from introducing evidence of his effort to repay ConocoPhillips.

### C. Kindred's failure to recuse violated Mr. Keays' due process rights.

Recusal is constitutionally required—in addition to statutorily required—to protect a litigant's constitutional due process rights when "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 872 (2009). Although the constitutional analysis sets a higher standard for recusal than statutory law (which requires only the possibility that a judge's impartiality could be "reasonably…questioned," *see* 28 U.S.C. § 455(a)), the question still is not "whether the judge is

actually subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an 'unconstitutional potential' for bias." *Id.* at 881.

In imposing an objective standard, the Supreme Court acknowledged "[t]he difficulties of inquiring into actual bias." *Id.* at 883. While actual bias would be grounds for relief, even a "judge's own inquiry into actual bias" may "misread[] or misapprehend[] the real motives at work in deciding the case." *Id.* Instead, the necessary inquiry is whether "'under a realistic appraisal of psychological tendencies and human weakness,' the judge's interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Id.* (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

For the same reasons that Kindred's failure to recuse violated statutory law, *see supra* Section III.C, Kindred's failure to recuse violated Mr. Keays' due process rights, whether or not Kindred acknowledges the conflict.

### D. The error was not harmless.

As an initial matter, the harmless error rule should not apply because the right to an impartial judge is a "constitutional right[] so basic that [its] infraction can never be treated as harmless error." *Chapman v. California*, 386 U.S. 18, 23, 23 n.8 (1967) (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)).

However, even if further analysis is required, the conduct here warrants a new trial. The *Liljeberg* test is the appropriate method of analysis. The Supreme Court in *Liljeberg* weighed three factors to determine whether a new trial was the appropriate remedy after finding that the judge's conduct created the appearance of partiality: (1) risk of injustice to the parties; (2) risk that the denial of relief will produce injustice in other cases; (3) risk of undermining confidence in the judicial process. *Liljeberg*, 486 U.S. at 864. In *United States v. Hernandez-Zamora*, another case

11

addressing Kindred's misconduct and his failure to recuse, the court applied the *Liljeberg* test in lieu of a Rule 52 harmless error analysis because the facts of that case created "precisely the kind of appearance of impropriety that § 455(a) was intended to prevent." Opinion & Order, *United States v. Hernandez-Zemora*, Case No. 3:21-cr-62-MAH (D. Alaska, Dec. 9, 2024), ECF No. 406 (quoting *Liljeberg*, 486 U.S. at 867). The court found Kindred's violation of § 455(a) to be "neither insubstantial nor excusable." *Id.*

The government engages in a lengthy discussion of whether the harmless error rule articulated in Federal Rule of Criminal Procedure 52(a) applies in lieu of the three-factor test articulated by the Supreme Court in *Liljeberg*. ECF No. 412 at 41-42. In contrast to the three-factor *Liljeberg* test, the harmless error analysis requires reversal unless "it is more probable than not that the error did not materially affect the verdict." *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997). The distinction, however, is a distraction because, under any standard, the appropriate outcome is the same: a new trial.

First, contrary to the government's assertion that Mr. Keays did not argue that he was prejudiced, Mr. Keays has clearly articulated that he was prejudiced because Kindred's decisions exclusively favored the government and prohibited him from presenting evidence that was key to his theory of defense—that he not only sold properties and emptied bank accounts to return money once he realized the funds were illegally obtained but also that he liquidated the retirement account he earned while serving as a police officer to make up any remaining difference, to his financial ruin. ECF No. 385 at 7-9, 20-21. The government believes that evidence to be irrelevant, *see* ECF No. 412 at 44, but its relevance was a determination to be made by the judge. Kindred sided with Klugman, who argued the motion for the exclusion of that evidence. And without a key piece of evidence to support his theory of defense, Mr. Keays lost his trial.

The injustice, therefore, is dozens of felony convictions that a jury may not have otherwise imposed. The case against Mr. Keays was not particularly strong, at least with respect to the essential element of his knowledge of the scheme. When a "case becomes progressively weaker, the possibility of prejudicial effect grows correspondingly." *United States v. Weatherspoon*, 410 F.3d 1142, 1151 (9th Cir. 2005) (remanding for a new trial after finding prosecutorial misconduct). There is a significant possibility that the jury would have come to a different conclusion.

The same analysis passes the harmless error standard under Rule 52(a). If Kindred allowed Mr. Keays to present the key piece of evidence relevant to his theory of defense, the jury may not have found the element of knowledge beyond a reasonable doubt. Mr. Keays may have walked away with a different verdict.

Second, failing to grant a new trial as a remedy for the multiple layers of misconduct could produce injustice for other litigants. The conduct here on all sides, from the judge to the U.S. Attorney's Office, was egregious. Kindred failed to acknowledge the potential conflict and to recuse himself from the case. The U.S. Attorney's Office not only failed to inform Mr. Keays of the potential conflict of interest prior to trial, but also two of its employees (Vandergaw and Klugman) have misled the defense in the course of this investigation by incorrectly stating that they "know of no information that then Judge Kindred was aware before or during the *Keays* trial of [their] romantic involvement." ECF No. 412-3 at 4; ECF No. 412-4 at 6. Such conduct must come with consequences to protect future litigants.

Third, failing to grant a new trial would undermine confidence in the judicial system. The public cannot trust a system if a verdict is to allowed to stand when it was overseen by a judge who left mid-trial to lie to a judicial body investigating his misconduct, who resigned after that judicial body found he engaged in sexual misconduct with multiple attorneys that appeared

regularly before him, and who was at one point—and perhaps is still—in possession of nude photographs of the trial attorney's girlfriend. This is particularly true when that very same trial attorney (Klugman) has also engaged in professional misconduct involving dishonesty.

### E.  At the very least, an evidentiary hearing is warranted.

None of the individuals whose knowledge is relevant to the issue of either actual or apparent bias have been subjected to cross examination. Both Klugman and Vandergaw were interviewed by a Special Assistant U.S. Attorney assigned to this post-trial litigation. The government provided transcripts of those interviews, but neither of them were cross examined. Even without cross examination, both made statements that are demonstrably false. Kindred has dodged a defense investigator and has made no statements about Mr. Keays' trial or this post-trial litigation.

The facts as known are sufficient to create an appearance of partiality. However, at the very least, the three individuals who are implicated in this litigation should be subject to examination in open court in an evidentiary hearing.

## IV.    Conclusion

Kindred's failure to recuse warrants a new trial, whether on statutory or constitutional grounds. There is, at the very least, the appearance of partiality favoring the government. That is the only standard Mr. Keays must meet. And there is evidence of actual bias in that Kindred made decisions throughout this trial that exclusively favored the government. This error was prejudicial, and it calls into question the integrity of the judiciary. Mr. Keays, therefore, respectfully requests that the Court grant the remedy of a new trial.

DATED July 15, 2025

RENE L. VALLADARES
Federal Public Defender

By:    *s/ Allie Wilson*
        Allie Wilson
        Assistant Federal Public Defender
        Counsel for Defendant Nathan Keays

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2025, a copy of the foregoing **Reply in Support of**

**Motion for a New Trial** was served via the ECF system on the following parties.

Steven Clymer: Steven.D.Clymer@usdoj.gov

Michael Heyman: Michael.Heyman@usdoj.gov

Adam Alexander: Adam.Alexander@usdoj.gov


*/s/Allie Wilson*
Employee of the Federal Public Defender

16