SCOTT BRADFORD
United States Attorney
District of Oregon

STEVEN D. CLYMER
Special Attorney
MICHAEL J. HEYMAN
United States Attorney
District of Alaska
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Telephone: (907) 271-1523
Email: steven.d.clymer@usdoj.gov
Email: michael.heyman@usdoj.gov

Attorneys for United States of America

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA | Case No. 3:20-CR-00085-GMS-MMS-2 |
|---|---|
| v. | Government's Surreply to Defense Reply to Government's Response to Defense Supplemental Motion for New Trial |
| NATHAN MICHAEL KEAYS, Defendant. | |

The United States of America, by and through its counsel of record, hereby replies to defendant Nathan Michael Keays's reply to the government's response to Keays's supplemental motion under Rule 33 of the Federal Rules of Criminal Procedure to vacate his conviction and for a new trial. Dkt. #382.[1]

---

[1] Keays's supplemental new trial motion was filed under seal at Dkt. #382; a redacted version was

1. **Keays's Reply Fails to Articulate a Plausible Basis for Recusal or a New Trial.**

To show that he is entitled to a new trial, Keays must establish that Kindred had an obligation to recuse himself either because of AUSA Vandergaw's involvement in his prosecution or AUSA Klugman's involvement. The government's response explained that Vandergaw was not involved in the prosecution and instead only was a filter AUSA; that she completed this assignment long before Keays's case was reassigned to Kindred; and that she thereafter performed only minor follow-up tasks that did not involve the district court. Dkt. #412 at pp. 23-26. Keays does not dispute any of this in his reply brief. Instead, he repeats evidence that Vandergaw had an undisclosed and troubling personal relationship with Kindred and was not honest about either that relationship or her relationship with AUSA Klugman. *See e.g.*, Dkt. #415 at p. 8. But these facts do nothing to show that Vandergaw had any meaningful involvement in Keays's prosecution requiring Kindred's recusal.

Keays's claims regarding Klugman fare no better. Although Klugman was government co-counsel in Keays's trial, Klugman did not have a personal relationship with Kindred that would have required Kindred's recusal. Dkt. #412 at pp. 16-17. Keays does not dispute this. Instead, Keays attempts to fashion a recusal claim based on Klugman's romantic relationship with Vandergaw and Vandergaw's undisclosed personal relationship

---

filed on the public docket at Dkt. #385. The government's response was filed publicly at Dkt. #412. Keays's reply was filed under seal at Dkt. # 415; a redacted version was filed at Dkt. #417. Citations here will be to the unredacted filings, whether sealed or not.

with Kindred. But the mere existence of these two relationships is not enough to call into question Kindred's impartiality or otherwise show that Kindred was required to recuse himself from this (or any) case in which Klugman represented the government. This is so despite evidence that Kindred, Klugman, and Vandergaw *later* lied to the Ninth Circuit and/or DOJ investigators about personal relationships, that Kindred *later* resigned in disgrace in connection with a misconduct finding, and that Vandergaw and Klugman *later* were placed on administrative leave. Keays's trial, and thus Kindred's ability to recuse himself from it, ended long before Kindred and these AUSAs made those false statements, before Kindred resigned, before the Ninth Circuit's misconduct finding, and before Vandergaw and Klugman were placed on administrative leave. Accordingly, Keays's reliance on these irrelevant facts in his reply brief, *see, e.g.*, Dkt. #415 at pp. 8-9, is misplaced and useless to him.

Kindred's reply brief attempts to cobble together a theory by which Kindred's impartiality in Keays's' case could reasonably be questioned because of Klugman's involvement. Keays posits that there is a "reasonable assumption that Klugman had information that could doom Kindred's career [meaning that Vandergaw had sent nude photographs to Kindred and neither had disclosed this]—and that Kindred knew it." Dkt. #415 at p. 2. Keays apparently believes that this created a motive for Kindred to curry

favor with Klugman.[2]

But, although Klugman had learned of allegations about Vandergaw and Kindred from First Assistant United States Attorney Kathryn Vogel, Dkt. #412-1 at p. 10, ¶ 17; Dkt. #412-3 at p. 1, ¶ 3, there is no evidence that Kindred knew or suspected that Klugman had learned of the allegations from either the USAO management or Vandergaw. And any inference or "assumption" that Kindred feared that Klugman had learned these things is entirely speculative. *See, e.g.*, *United States v. Holland*, 519 F.3d 909, 914 n.5 (9th Cir. 2008) (explaining that speculation is insufficient to require recusal). Indeed, an objective observer familiar with all the facts likely would conclude that Kindred believed the opposite, that his exchange of text messages with Vandergaw and his receipt of nude pictures from her remained secret. Kindred reasonably could expect that Vandergaw had kept and would continue to keep quiet about sending nude pictures to a federal judge, especially with a Ninth Circuit investigation underway. Continuing to appear before Kindred without disclosure of their personal relationship could subject Vandergaw to professional sanction, providing a powerful reason for her to keep quiet. Even if Kindred had learned that Vandergaw and Klugman were romantically involved, this would give Kindred greater assurance that Vandergaw had not shared her secret with Klugman. It

---

[2] Keays makes this same argument in his motion to dismiss, Dkt. #421, to show that Kindred was biased in the government's favor in Keays's case. The government's response to that motion explains why this claim is meritless. For the Court's convenience, and because Keays makes the same argument in both his reply brief in support of his supplemental motion for a new trial and in his motion to dismiss, the government here reiterates its explanation why the claim lacks merit.

would be unlikely for Vandergaw, indeed, for anyone, to reveal this kind of embarrassing personal information with a new partner at the outset of a romance.

In any event, even had Kindred believed or suspected that Klugman knew something about the nude pictures or other details of Kindred's relationship with Vandergaw, by the time Kindred made substantive decisions in *Keays*, Klugman was the least of Kindred's concerns. On March 1, 2024—before Kindred ruled on pretrial motions and before the *Keays* trial began—Kindred received a copy of the final report of the Ninth Circuit's Special Committee, which made clear that the Ninth Circuit's investigators knew about both Kindred's receipt of the Vandergaw nude pictures and Kindred's other misconduct with both Vandergaw and his law clerks. *See* Dkt. #412 at pp. 35-36 (discussing timing of Special Committee Report and *Keays* motions and trial). And unlike Klugman, the Ninth Circuit had authority to adversely affect Kindred's reputation and career. If Kindred had reason to dread that his career could be doomed, it was not because of anything known or suspected by Klugman who, at best had second-hand hearsay information that was better known to the Ninth Circuit. Currying favor with Klugman or the USAO would have done Kindred no good. Thus, the evidence contradicts the speculative "fear of Klugman" claim in Keays's reply in support of his supplemental new trial motion.

**2. Keays's "Catch-22" Claim in His Reply Brief Lacks Merit.**

In his reply brief, Keays complains that the government requires that he demonstrate entitlement to a new trial "while relying on the testimony of its own employees whose

credibility the government agrees is impugned" and being in possession of "the very information that would definitively prove that misconduct occurred here." Dkt. #12 at pp. 1, 6. This complaint is meritless for multiple reasons.

First, there is no doubt that the law requires that "[t]he heavy burden of proving a new trial is warranted rests with the defendant." *United States v. Dezfooli*, No. 2:22-CR-00142-CDS-DJA, 2025 WL 1927537, at *6 (D. Nev. July 14, 2025). The government does not impose this burden; the law does.

Second, although government employees may be witnesses here, these witnesses were accessible to both parties. Keays was entitled to have declarations from government witnesses address relevant areas of inquiry that he identified, Dkt. #350 at ¶ 3; move for witness depositions, *id.* at ¶ 5; and move for witnesses to testify at an evidentiary hearing, *id.* at ¶ 4, which he has done, *see* Dkt. #421 at pp. 21-22.

Third, the government does not vouch for witnesses. It questioned witnesses available to it about relevant matters and reported resulting information to the Court and defense counsel. Whether the Court chooses to believe information from any witness or not, it still will be the case that there is no evidence demonstrating that Kindred was required to recuse. For example, disbelief of Vandergaw and Klugman will not show that Klugman somehow attempted to exploit his relationship with Vandergaw, and hers with Kindred to influence Kindred during Keays's prosecution. Nor is there any evidence, only speculation, about what Kindred believed Klugman to have heard about his relationship

with Vandergaw. That some witnesses with relevant information are government employees and that there is evidence casting doubt on their credibility does not relieve Keays of his "heavy burden" of showing a violation of 18 U.S.C. § 455(a) or due process. Keays has not met that burden, and this is not because of any "Catch-22" of the government's making.

3.  **Recently-Provided Information Does Not Assist Keays.**

After Keays filed his supplemental new trial motion, the government produced two documents that Keays now contends show that Kindred was obligated to recuse. Dkt. #415 at p. 2. He is wrong. Although Keays trumpets these two documents as favorable to both his motion to dismiss and his supplemental new trial motion, they do not rescue Keays's meritless claims. The government's response to Keays's motion to dismiss explains why Keays's contentions about these documents are unpersuasive.

4.  **Keays's Claim That He Was Prejudiced by Exclusion of Evidence is Contrary to Law.**

To show that any recusal error here was not harmless, Keays reiterates his contention that he was unfairly prejudiced when Kindred excluded evidence that Keays "return[ed] money once he realized the funds were illegally obtained." Dkt. #415 at p. 2. Keays does not dispute that this return of stolen money occurred only "after he was sued, had assets legally restrained, had his residence and storage units searched, and had been notified that he was under federal criminal investigation." Dkt. #412 at p. 44. But he claims that a disinterested judge nonetheless properly could have determined that Keays's

return of money was relevant and admissible evidence. Dkt. #415 at p. 12. This is not so. Such evidence is irrelevant and thus was inadmissible as a matter of law under Fed. R. Evid. 402. *See, e.g.*, *United States v. McConnell*, No. CR 19-90-BLG-SPW, 2021 WL 37585, at *3 (D. Mont. Jan. 5, 2021) ("Non-contemporaneous evidence of intent to repay or eventual repayment is neither material nor a defense to the intent to defraud."). In *McConnell*, the court held that repayment made after the defendant had been interviewed by law enforcement officials was "irrelevant and inadmissible to show lack of intent." *Id.*; *see also United States v. Coin*, 753 F.2d 1510, 1511 (9th Cir. 1985) (per curiam).

## 5. Conclusion

Keays's' supplemental new trial motion and reply brief are replete with accusations of wrongdoing and deceit by Kindred, Vandergaw, and Klugman. But absent is any valid explanation of how the alleged falsehoods and misconduct, most of which post-dated Keays's trial, and none of which reasonably call into question Kindred's impartiality in Keays's case, required recusal or warrant a new trial.

RESPECTFULLY SUBMITTED July 30, 2025, at Anchorage, Alaska.

SCOTT BRADFORD
United States Attorney for the District of Oregon

_[signature]_
Steven D. Clymer
Special Attorney
Acting Under Authority Conferred by 28 U.S.C. § 515
United States Department of Justice

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2025, a true and correct copy of the foregoing was served electronically on defense counsel.

United States Attorney's Office